IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DELPHIA ALINE GREENE,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.
1:15-CV-01956-TWT-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION ON AN APPEAL FROM A SOCIAL SECURITY DISABILITY ACTION

This case is before the Court on Plaintiff's Motion for Summary Judgment. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claims. For the reasons outlined below, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and this matter be **REVERSED AND REMANDED** to the Commissioner for proceedings consistent with this Order. (Doc. 9).

On June 25, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act") and for supplemental security income under Title XVI of the Act, alleging disability since December 2, 2003, due to a myriad of issues associated with obesity, diabetes, high

AO 72A
(Rev.8/82)

blood pressure, high cholesterol, and degenerative disc disease. (Transcript ("Tr.") 20-23, 84-106, 254-55, 260). After Plaintiff's application was denied initially on May 17, 2011 (Tr. 107-08), and upon reconsideration on July 14, 2011 (109-10), Plaintiff appealed the denial to an Administrative Law Judge ("ALJ"), who after multiple hearings (Tr. 38-51, 54-83), again denied Plaintiff's claims in a written decision on September 20, 2013, finding Plaintiff was not disabled (Tr. 17-37). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on March 26, 2015. (Tr. 1-13). Plaintiff then appealed the decision to this Court. (Doc. 1). This case is now before the undersigned upon the administrative record and the parties' pleadings and briefs, and is ripe for review pursuant to 42 U.S.C. § 405(g).

I.   **STANDARD FOR DETERMINING DISABILITY**

An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities that are demonstrable by medically accepted clinical or laboratory diagnostic techniques, and must be of such severity that the claimant is not only unable to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42

U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B)-(G).

The burden of proof in a social security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience, and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

As summarized below, a five-step sequential analysis must generally be used when evaluating a disability claim.

(1) The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

(2) The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3) The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the applicant is automatically entitled to disability benefits.

(4) The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5)   The Commissioner must determine, on the basis of the applicant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520-404.1576, 416.920-416.976.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE ALJ

The ALJ made the following findings of fact and conclusions of law:

(1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

(2)   The claimant has not engaged in substantial gainful activity since December 2, 2003, the alleged onset of disability date (20 C.F.R. §§ 416.920, et seq., 416.971, et seq.).

(3)   The claimant has the following severe impairments: obesity, diabetes mellitus, diabetic neuropathy, diabetic retinopathy, hypertensive retinopathy, hypertension, heart problems, and degenerative disc disease (20 C.F.R. §§ 404.1520(c), 416.920(c)).[1]

(4)   The claimant does not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)   The claimant has the residual functional capacity to perform significantly less than the full range of sedentary work activity. Specifically, she can lift/carry 10 pounds occasionally and 5 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, balance, kneel, and crouch; and she can frequently stoop, reach from the waist to chest with both arms, and reach above the shoulder level with both arms. She can occasionally handle and finger with the left hand and frequently handle and finger with the right hand. She must avoid crawling and climbing ladders,

---

[1] The ALJ also found that Plaintiff had non-severe impairments of pylonephritis and arthritis.

4

ropes, or scaffolds; and she cannot work around moving mechanical parts, high exposed places, or around hazards.

(6) The claimant is able to perform past relevant work as a ticket agent. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565, 416.965).

(7) The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2003, through the date of the decision. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(Tr. 20-31).

### III. CLAIMS OF ERROR

Plaintiff alleges that the decision of the Commissioner is in error for the following reasons:

1. The ALJ erred in discrediting the opinion of Plaintiff's treating physician, Dr. Dorothy White-Williams, without providing legally sufficient reasons for doing so.

2. The ALJ failed to consider all of Plaintiff's impairments in assessing Plaintiff's residual functional capacity ("RFC") when he did not account for limitations caused by Plaintiff's diabetic retinopathy and hypertensive retinopathy.

### IV. SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of social security benefits by the Commissioner is limited. This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The only function of the Court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were

AO 72A
(Rev.8/82)

applied in the fact-finding process. The findings of the Commissioner are conclusive if supported by substantial evidence and proper legal standards were applied. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, our review of the ALJ's application of legal principles is plenary. Walker, 826 F.2d at 999.

## V. BACKGROUND FACTS

Plaintiff, born July 17, 1963, was 40 years old on the alleged disability onset date of December 2, 2003. (Tr. 29, 84). According to Plaintiff, she became disabled due to health complications arising from diabetes, high blood pressure, high cholesterol, and obesity. (Tr. 84-91). Plaintiff complained of worsening vision due to high blood sugar from diabetes and from hypertension, thumb lock, joint pain, cramps, heartburn, and

right wrist pain and swelling. (Tr. 58-60, 380-85, 464, 571-72). With regard to her vision, Plaintiff testified that she experiences blurry vision on a daily basis and can no longer drive. (Tr. 64). Plaintiff also testified that her diabetes causes dizziness four or five times a week, which limits her ability to concentrate. (Tr. 63-64). Plaintiff testified further to poor circulation in her legs due to diabetes; issues due to a history of a stroke; numbness in her feet limiting her ability to walk, stand, and/or sit; arthritis in her hands, limiting her ability to use her fingers for fine motor skills; and lower back pain resulting from an accident that occurred after her date-last insured. (Tr. 43, 58-59).

Plaintiff began seeing her treating physician, Dr. Dorothy White-Williams with Greater Atlanta Family Healthcare in March 2003, and saw her at least as late as September 2013. (Tr. 334, 415-17, 651, 657). Dr. White-Williams noted on many occasions Plaintiff's obesity and that her severe diabetes was not controlled by medication, as corroborated by lab findings. (Tr. 338, 341, 343, 350, 360, 371, 424, 459, 474, 513). Although Dr. White-Williams noted some "improvement" around April 2008, she also explained that, more recently, Plaintiff had very high blood sugar and blurred vision. (Tr. 476). Additionally, more other recent notes reflect active joint pain and ganglion in Plaintiff's hand, and trigger finger. (Tr. 501, 525).

On March 21, 2012, upon request, Dr. White-Williams opined that Plaintiff had been unable to work since 2002 due to multiple medical problems, including severe diabetes, hypertension, and high cholesterol, as well as vision impairments, knee pain, and arthritis. (Tr. 522, 578).

7

On September 3, 2013, upon request, Dr. White-Williams completed an RFC Assessment. (Tr. 645-47). Dr. White-Williams diagnosed Plaintiff with hypertension, diabetes, arthritis, chronic pain, obesity, hyperlipidemia, menopause, and depression, based upon, among other things, direct observation and clinical findings. (Tr. 645). Dr. White-Williams opined that Plaintiff's symptoms were sufficiently severe to "constantly" interfere with her attention and concentration; that her medications would cause sedation and drowsiness; that she could only sit for 10 minutes and stand for 5 minutes at a time; that she would consistently need to sit in a recliner or otherwise lie down through each day; that during an 8-hour work day, she could sit for between 2-3 hours, stand for less than 2 hours, and walk for less than 2 hours; and that even so, she would need an assistive device, be allowed to shift positions at will, and take 5 minute breaks approximately every 15 minutes. (Tr. 645-46). Noting that Plaintiff was unable to even carry groceries, Dr. White-Williams indicated that Plaintiff could not lift objects during the work day. (Tr. 646). Finally, Dr. White-Williams opined that Plaintiff would be less than seventy-five productive compared with a healthy individual (the lowest measure allowed on the form), and would be absent from work due to her impairments more than 4 times per month. (Id.). Dr. Williams noted six different medications Plaintiff was taking in relation to her blood pressure, heart-problems, diabetes, neuropathy, arthritis, and cholesterol. (Tr. 647). As part of a Mental Capacity Assessment completed at the same time, Dr. White-Williams again opined that Plaintiff was unable to work since 2002. (Tr. 649). Dr. White-Williams indicated that her

September 3, 2013 opinions were based upon direct observation/treatment, physical examination, historical medical records, laboratory results, and patient reporting. (Tr. 651).

An ophthalmologist, Dr. James Alexander, examined Plaintiff in May 2013, and diagnosed Plaintiff with diabetic retinopathy and hypertensive retinopathy, based upon objective measurements of Plaintiff's visual acuity and direct observations of her eye. (Tr. 581). Plaintiff's uncorrected vision was noted to be 20/200 and 20/100, and her corrected vision was 20/40 and 20/50. (Id.). Soon after, Dr. Lawrence Reece completed medical interrogatories relating to the limitations based upon the ophthalmologist's records, and concluded that while there were some visual blurriness, there was not enough to meet Social Security Listings at 2-02, and there was insufficient data to review Plaintiff's vision for Listings 2-03 or 2-04. (Tr. 582-83).

An examining state-agency consultant, Dr. Ken Sanford, opined that Plaintiff had uncontrolled diabetes and hypertension; knee problems; numbness in her legs and feet from diabetic neuropathy; fatigue; and heartburn and nausea. (Tr. 490-92). Dr. Sanford noted that she could not afford certain medications. (Tr. 490). Dr. Sanford also noted Plaintiff's morbid obesity, despite a 50-pound weight loss. (Id.).

Finally, without the benefit of Dr. White-Williams' RFC Assessment, a non-examining consultant, Dr. Shakoora Omonua, completed an RFC Assessment in February 2011, finding considerably fewer limitations than Dr. White-Williams: namely, that due to her conditions, Plaintiff could only lift/carry 50 pounds occasionally

and 20 pounds frequently; sit, stand, or walk for 6 hours in an 8-hour workday; only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 87-89).

The ALJ found Plaintiff was not disabled. (Tr. 23-30). The ALJ also found Plaintiff has an RFC with the following limitations: that she can lift/carry 10 pounds occasionally, 5 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, kneel, and crouch; and can frequently stoop, reach from the waist to chest with both arms, and reach above the shoulder level with both arms; must avoid crawling and climbing ladders, ropes, or scaffolds; and she cannot work around moving mechanical parts, high exposed places, or around hazards.

Plaintiff challenges the ALJ's finding contending that the ALJ did not adequately explain his reasons for discrediting Dr. White-Williams' opinions and for failing to include any discussion of Plaintiff's diabetic retinopathy or hypertensive retinopathy in his explanation of Plaintiff's physical limitations. The other medical evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## VI.     ANALYSIS OF CLAIMS OF ERROR

Plaintiff argues among other things that the ALJ erred (1) in failing to state with sufficient particularity the weight given to the RFC Assessment of Plaintiff's treating physician, Dr. White-Williams or the reasons for giving it such weight, and (2) in failing

10

to fully credit the assessed limitation in that opinion. The Commissioner responds that the ALJ properly found that Dr. White-Williams' opinion was not supported by the medical evidence and provided sufficient explanation for discounting the opinion.

It is true that an ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)); see also McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why.") (internal citations omitted). Likewise, the failure of an ALJ to specify what weight is given to a treating physician's opinion or the reasons for giving it no weight is reversible error. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (citing MacGregor, 786 F.2d at 1053). This is the case because a reviewing court, "cannot [] conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985) (citing Owens v. Heckler, 748 F.2d 1511 (11th Cir.1984) and Hudson v. Heckler, 755 F.2d 781 (11th Cir.1985)); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir.1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"); Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 834 (11th Cir. 2011) (holding that

the ALJ must state with particularity the weight given to different medical opinions and his reasons therefore and that where the ALJ fails to state the reasons with some measure of clarity, the court cannot affirm simply because some rationale may have supported the ALJ's decision) (citing Owens, 748 F.2d 1511, 1516 (11th Cir. 1984)). Indeed, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing Bloodsworth, 703 F.2d at 1239).

In this case, the ALJ stated clearly that he "d[id] not find [Dr. White-Williams' RFC Assessment] persuasive," and therefore "reject[ed] the treating physician's opinion as vague and unsupported by the medical evidence." (Tr. 27). As a result, it is clear that the ALJ gave the opinion little or no weight, and thus properly explained the weight provided. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (not requiring an explicit finding as to credibility, when the implication is obvious to the reviewing court) (citing Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Moreover, the ALJ explained his reasons for rejecting Dr. White-Williams' opinion: first, that there are "no corresponding diagnostic studies" to indicate a physical impairment; second, that there is "no objective evaluation of claimant's capabilities, e.g. walking, standing, sitting"; third, that the "record does not mention any of [Plaintiff's] limitations over the course of her treatment"; fourth, that Dr. White-Williams "gave no timeframe for her findings," that is whether Plaintiff was "temporar[ily] or permanant[ly]" disabled; and fifth, that Dr. White-Williams gave "no specific reason for

her opinion." (Tr. 27). As a result, the ALJ provided several reasons for finding Dr. White-Williams' RFC Assessment entitled to little or no weight.

That said, the Court is nevertheless inclined to agree with Plaintiff that those reasons do not provide adequate justification for rejecting the opinions contained in Dr. White-Williams' RFC Assessment. Generally speaking, in assigning weight to medical source opinions, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, and the opinions of treating physicians be given more weight than non-treating physicians. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The law of this circuit is also clear that the testimony of a treating physician must be given "substantial" or "considerable" weight unless "good cause" is shown to the contrary. Johns v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987) (citing Broughton, 776 F.2d at 961). A similar preference for the opinions of treating doctors is found in the Social Security regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Social Security Ruling 96-2p (the medical opinion of a treating physician "must be given controlling weight, i.e., it must be adopted" if it is "well-supported and not inconsistent with the other substantial evidence in the case record").

13

The ALJ can only reject a treating physician's report if it is not accompanied by objective medical evidence, is wholly conclusory, lacks persuasive weight, or where the evidence as a whole supports a contrary conclusion. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)); 20 C.F.R. §§ 404.1527, 416.927. Moreover, to reject a treating physician's opinion, the reasons provided must be supported by substantial evidence and the ALJ may not misstate the record. Mills v. Astrue, 226 F. App'x 926, 931 (11th Cir. 2007); Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 63-64 (11th Cir. 2010); see also Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1366 (N.D. Ga. 2001) (holding that although the ALJ provided five reasons for rejecting a treating physician's opinion, the record refuted some reasons, others were not supported by substantial evidence, and the "remaining reasons offered by the ALJ [were] meritless").

Here, while the ALJ provided five reasons for rejecting Dr. White-Williams' RFC Assessment, the ALJ either failed to support his reasons with substantial evidence or mischaracterizes the record in support of his reasons. First, the ALJ's assertion that there were "no corresponding diagnostic studies," in support of Dr. White-Williams' opinion is belied by the fact that Dr. White-Williams' records are replete with references to Plaintiff's uncontrolled diabetes and hypertension, as well as her obesity, along with lab results, physical measurements, and a litany of prescribed medications corroborating the same. Second, the ALJ's contention that there is "no objective evaluation of claimant's capabilities, e.g. walking, standing, sitting," ignores the very fact that the

RFC Assessment itself is largely that - a measure of Plaintiff's physical capabilities as determined by Dr. White-Williams, which states that she relied on direct observation, physical examination, historical medical records, and laboratory findings in making her assessment. (See Tr. 651). Third, the ALJ's statement that the "record does not mention any of [Plaintiff's] limitations over the course of her treatment," while largely true, does not refute that such limitations existed; indeed, given that Plaintiff's physical limitations are the result of uncontrolled underlying medical problems - that is, diabetes, hypertension, and obesity - one would expect treatment to focus primarily on those causes. (See e.g., Tr. 371 ("patient with severe diabetes not controlled on medications (3 drugs maxed out)"; see also Tr. 63, 606-07, 614, 633-34 (chronic high blood pressure – recorded at 221/121 – cause of hospitalization and strokes)). Moreover, Dr. White-Williams treatment records do refer to Plaintiff's condition as disabling with physical limitations (Tr. 571-72) and notes that Plaintiff has stopped driving (Tr. 372), and has leg cramps (Tr. 380). Fourth, the ALJ's complaint that Dr. White-Williams "gave no timeframe for her findings," ignores that Dr. White-Williams elsewhere stated that Plaintiff's medical conditions disabling as of 2002. (Tr. 578). Finally, the ALJ's assertion that Dr. White-Williams gave "no specific reason for her opinion," ignores her diagnoses – contained in the assessment form itself and elsewhere – of hypertension, diabetes, arthritis, obesity, chronic pain, hyperlipidema, menopause, and depression; along with Dr. White's observations regarding Plaintiff's symptoms including pain, dizziness, fatigue, and weakness. (Tr. 645). It appears to the undersigned that these are

15

the reasons for Dr. White-Williams' opinions regarding Plaintiff's limitations. Because the ALJ failed to properly refute Plaintiff's treating physician's opinion with substantial record evidence, the matter should be **REVERSED AND REMANDED** to the Commissioner for proceedings consistent with this Order. Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830 (11th Cir. 2011); Davis v. Comm'r of Soc. Sec., 449 F. App'x 828, 833 n. 1 (11th Cir. 2011).[2]

On remand, it should be noted that the ALJ is required to consider the combined effects of all of Plaintiff's impairments during the alleged period of disability. "When a claimant alleges several impairments, the ALJ has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Sneed v. Barnhart, 214 F. App'x 883, 887 (11th Cir. 2006) (citing Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir.1991)); see also 20 C.F.R. §§ 404.1523, 416.923 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Additionally, the Court notes the ALJ rejected, at least in part, Dr. White-Williams' opinion because of timing issues. A claimant is eligible for disability insurance benefits where he demonstrates disability on or before the last date on which he was insured. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); see also 42

---

[2] Because the Court finds remand warranted for this reason, it need not address Plaintiff's other claim of error.

16

U.S.C. § 423(a)(1)(A). Because Plaintiff's date last insured was December 31, 2007, she must show that she was disabled on or before that date. Moore, 405 F.3d at 1211. "Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date . . . that opinion [must] be consistent with pre-insured-date medical evidence." Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 831-32 (11th Cir. 2011) (citations omitted). The ALJ should bear this in mind, while also considering the "basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam). The ALJ should recontact a medical source, when the evidence received from that source is inadequate to determine whether the claimant is disabled. Vesy v. Astrue, 353 F. App'x 219, 224 (11th Cir. 2009); 20 C.F.R. § 416.912(e). Thus, if the ALJ cannot determine whether Plaintiff was disabled on or before December 31, 2007, based upon the record evidence, the ALJ should recontact Plaintiff's medical providers for additional information.

Finally, if the ALJ concludes again that Dr. White-Williams' opinion does not warrant controlling weight, the ALJ must still "weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion." Cavarra v. Astrue, 393 F. App'x 612, 614 (11th Cir. 2010); Sullivan v.

17

Comm'r of Soc. Sec., 353 F. App'x 394, 396-97 (11th Cir. 2000); 20 C.F.R. §§ 404.1527(c), 416.927(c).

## CONCLUSION

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and this matter be **REVERSED AND REMANDED** to the Commissioner for proceedings consistent with this Order. (Doc. 9).

SO **REPORTED AND RECOMMENDED**, this __23__ day of June, 2016.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE